136 So.2d 181

C. Leon McGALLAGHER et al.

v.

O. J. BOSARGE.

I Div. 957.

Supreme Court of Alabama.

Dec. 21, 1961.

M. A. Marsal, Mobile, for appellant.

Vincent F. Kilborn, Mobile, for appellee.

MERRILL, Justice.

This appeal is from a judgment in an election contest in which the contestant Bosarge was declared elected and appellant McGallagher was ousted from office as a member of the Town Council of Bayou La Batre, a small municipality in Mobile County.

The election was held under the law providing that the five candidates for councilman who received "the largest number of legal votes for the respective offices to be filled" should be declared elected. Tit. 37, § 34(16), Pocket Part, Code 1940. There were fourteen candidates for councilman. Two voting machines were used in this election.

There was an error in setting up the machines for the election. Since the error was identical in each machine, we shall confine the discussion to only one machine.

The spaces and voting levers on the machine were horizontal and were numbered. The rows were lettered alphabetically. The first two spaces on row A were 1–A and 2–A and contained the names of the two candidates for mayor, about whom there was no dispute and no contest. After these two spaces, there were five locked spaces, and then five candidates for councilman were listed, and all the other spaces to the right were locked. That would put the name of the first such candidate under the seventh lever, but this candidate's name, Hilton S. Bosarge, was mistakenly listed as 6–A, the result being that when a voter pulled the lever to vote for him, it registered on the back of the machine in space 7–A instead of 6–A.

We show the front and back of the voting machine to demonstrate the error, so far as the first ten candidates are concerned. The first line shows the face of the machine, the second the vote tally at the back:

| 6–A | 7–A | 8–A | 9–A | 10–A | 11–A |
|---|---|---|---|---|---|
| Hilton S. Bosarge | O. J. Bosarge | Wade E. Bosarge | Edith G. Collier | Dominick J. Ficarino | |
| 000 | 54 | 124 | 84 | 72 | 127 |

| 6–B | 7–B | 8–B | 9–B | 10–B | 11–B |
|---|---|---|---|---|---|
| E. W. Hawes | Clarence Mallett | C. Leon McGallagher | Jesse Robertson, Jr. | John Edward Seaman | |
| 000 | 100 | 66 | 77 | 106 | 134 |

No one actually pulled the sixth lever which was tallied as 6–A on the back of the machine, because the sixth lever was locked. The first open lever was that of space 7–A which was assigned to Hilton S. Bosarge. But the tally showed his vote and that of E. W. Hawes in row B to be zero, while the tally showed that unnumbered candidates in 11–A and 11–B received 127 and 134 votes respectively.

The mistake was obvious. Hilton S. Bosarge received 54 votes, O. J. Bosarge 124, Wade E. Bosarge 84, Edith Collier 72, Ficarino 127, Hawes 100, Mallett 66, McGallagher 77, Robertson 106 and Sea-

man 134. But the election officials (the inspectors) listed the results as shown, supra, giving Hilton S. Bosarge and E. W. Hawes no votes, listing the others as shown, and giving the 127 and the 134 votes listed under 11–A and 11–B to no one.

Some of the inspectors testified that they themselves voted for either O. J. Bosarge and/or E. W. Hawes and knew others who voted for them, but they still listed them as receiving no votes because the 6–A and 6–B tally showed no votes. They testified that they knew it was wrong and that they acted wrongfully, but they just

matched the numbers and letters on the front with the same numbers and letters on the back side of the machine.

Only two questions are presented to us. The first is—does the petition contain sufficient allegations to invoke the jurisdiction of the court; and second—does the proof sufficiently sustain the allegations so that the petitioner is entitled to the relief awarded by the trial court?

The statute governing the contest is Tit. 17, § 231 et seq. While no mention is made in § 231 of municipal elections, it is provided in Tit. 37, § 34(17), Pocket Part, Code 1940, that such election contests shall be had under Tit. 17, § 231, which provides that an election may be contested on the ground, among others, of malconduct, fraud or corruption on the part of any inspector, clerk, other election official or other person.

Appellants contend that the petition does not contain any inference of evil intent on the part of any of the inspectors. It is conceded that there was negligence, but it is insisted that no evil intent is alleged.

We think the allegations in paragraphs 10 and 11 of the contest are sufficient to invoke the jurisdiction of the court. After showing how the election was conducted, it is alleged that:

"* * * Wherefore contestant says that malconduct occurred on the part of the officers of the election for Boxes 1 and 2 respectively in that they unlawfully failed and refused to record for candidates whose names appeared on the ballot in such boxes, the vote cast for such candidates but to the contrary wrongfully and unlawfully recorded such votes in favor of different candidates on such machine in each case and wrongfully and incorrectly recorded excessive votes for contestees for councilmen not cast for such contestees and not due to be recorded or counted for such contestees and which excessive votes recorded for contestees, if taken away from them, would reduce the number of legal votes cast for each of them below the total number of legal votes cast for contestant and four other candidates. * * *"

We quote from one of the leading cases on the subject of election contests in this state, Ex parte Shepherd, 172 Ala. 205, 55 So. 627, 630:

"Petitioner's insistence is that the statement of contest filed was insufficient to invoke the jurisdiction of the circuit court, in that it fails to aver that the changes made in the returns of election, alleged to have been made by some person or persons to the contestant unknown, were made with evil motive or wickedness of purpose, an essential element of malconduct as defined in Hilliard v. Brown, supra. (97 Ala. 92, 13 So. 125). The statute having fixed no form in which a contest of election shall be stated, we will not be expected, of course, to hold that a charge of malconduct must be preferred in any fixed form of words, for that would be to deny the possible legal equivalence of different forms of expression and to foreclose the propriety in such cases of any amendment whatever at any time whatever. The allegation of the contest is that the changes alleged to have been made in the returns were unlawfully made and changed the declared result of the election returns. It is a necessary rule of law, as it is of all human conduct, that men shall be presumed to have intended the natural and inevitable consequences of their voluntary acts. Society could not exist on any other hypothesis. It must be inferred therefore, that the alleged changes proceeded from a purpose to violate the law and to change the lawful evidence of the result of the election. Such a purpose was an evil purpose. But petitioner would neutralize the force of the allegation that

the changes in the returns were unlawfully made by supposing that they were made by the inspectors themselves and for the purpose of making the returns speak the truth in respect to the result of the votes cast, an hypothesis which we may indulge, it is said, because it is not denied in the contest. That course on the part of the inspectors, it is urged, would be unlawful, but it could not be evil because it would give effect to the will of the majority. If we assume the unlawfulness of such a course on the part of the inspectors, as the argument does, we must also assume its evil purpose. A purpose to violate the law constitutes the malconduct of the statute. Any other conclusion would sanction the theory that individuals may put themselves above the law, that good ends may be effectuated by unlawful means, would subvert all law. It may be further said in this connection that the statutes give strong color to the conclusion that it was not necessary, for the purpose of conferring jurisdiction, to make the specific allegation that the acts charged were unlawful, even though they may have been done by the inspectors of election. The returns had been delivered to the returning officers. The law provides that, as soon as the ballots are all counted, the inspectors must ascertain the number of votes received for each person and for what office, must make a statement of the same in writing, which must be signed by them, and such statement, thus certified, must be sealed up in a box to be furnished by the sheriff of the county, and immediately delivered to the returning officer of the precinct. Code 1907, § 415. Section 6816 makes it a felony for any inspector to make or sign a false copy of the certificate of the result, or for any returning officer to fail to deliver the certificate as delivered to him to the probate judge. In view of these provisions of the statute, it may be seriously doubted whether an inspector of election has any better right than any other individual to change the certificate for any purpose after it has been delivered to the returning officer, thus passing beyond the field of his official duty, or whether an inspector, who changes a certificate for the purpose assumed in the argument, does not lay himself liable to the penalty of the law.

"The statement of the grounds of contest alleged, if not categorically, then inferentially, every fact (some of them have not been repeated for the reason that no question is made as to them) necessary to give the court jurisdiction to try the contest. The facts alleged were sufficient to challenge the attention of the court, to set the judicial mind in motion, to answer affirmatively the question whether it can be gathered from the allegations, either directly or inferentially, that the party is entitled to the relief sought. 'All the cases agree that, if the allegations tend to show or colorably or inferentially show each material fact necessary to constitute a cause of action, they will uphold the judgment collaterally.'—Van Fleet's Coll. Attack, § 61. We must hold, therefore, that, however irregular or defective in allegation the statement of contest may be, it is sufficient to confer jurisdiction upon the court in which it was filed. We find no reason in Hilliard v. Brown (97 Ala. 92, 13 So. 125) for holding otherwise. The ruling there amounted to just this: The averment of mere omissions of official duty, of mere negligence on the part of officers, without more, is not the equivalent of an averment of malconduct under the statute as it then was. In the case at hand the averment is of an intentional, affirmative violation of law by the doing of that which the law prohibits."

In Webster's Third New International Dictionary, malconduct is defined as bad conduct; especially dishonesty in management of public affairs. The Second Edition of Websters defines it as ill conduct; especially dishonest conduct; maladministration.

■ The allegations that the malconduct of the election officers consisted of the fact that they unlawfully failed or refused to record the vote cast for the candidates and they wrongfully and unlawfully recorded votes for candidates which were not cast for them invokes the jurisdiction of the court to hear the contest under the statute and the holding in Ex parte Shepherd, 172 Ala. 205, 55 So. 627.

The second question raised, did the proof sustain the allegations, is answered affirmatively. As already shown, the inspectors knew that they had listed the wrong number of votes by the wrong person, but they did it nevertheless. They knew that their official certificate did not correctly show the votes cast for a single candidate. However, all the election officials did file an affidavit showing the correct number of votes each candidate received.

■ The right to a public office dependent on an election by the people is determined by the number of legal votes received at the election and not by the certificate of election. Ex parte Reid, 50 Ala. 439.

■ An election contest is a proceeding in which the public is interested, as it is for the public good; and relief is granted in an election contest only in favor of the candidate receiving the highest vote. Ex parte Hartwell, 238 Ala. 62, 188 So. 891.

■ It is a fundamental principle of popular government that the legally expressed will of the majority must prevail in elections. State ex rel. Cleveland v. Stacy, 263 Ala. 185, 82 So.2d 264.

Here, there never was any question as to which candidates received the most votes. The voters cast their vote by pulling the lever above the name of the candidate. The machine correctly recorded the pull of every lever. In rows A and B, there were only five levers in each row which could be pulled in the race for council, and there were only five separate tallies in each row on the back of the machine, each in the same consecutive order as they were listed on the front. But because the numbering on the front was incorrect, the inspectors erred in trying to match numbers instead of listing the correct vote. The voters voted for persons instead of numbers and had the vote been so canvassed, there would have been no dispute.

There was a right way and a wrong way to canvass the vote and the inspectors chose the wrong way, thereby giving a false total to every candidate in the race for town council.

■ The evidence amply supports the finding of the trial court, who stated that he was complying with Tit. 17, § 250, Code 1940, which provides in pertinent part:

"If, on the trial of the contest of any election, either before the judge of probate, or the circuit court, it shall appear that any person other than the one whose election is contested, received, or would have received, had the ballots intended for him and illegally rejected been received, the highest number of legal votes, judgment must be given declaring such person duly elected, and such judgment shall have the force and effect of investing the person thereby declared elected, with full right and title to have and to hold the office to which he is declared elected. * * "

The trial court correctly followed the statute.

Affirmed.

LIVINGSTON, C. J., LAWSON and STAKELY, JJ., concur.