PER CURIAM.
This is an appeal from a general election contest filed pursuant to Code 1975, § 17-15-20, et seq., in the Fayette County Circuit Court. The trial court held that the election of the Democratic nominee, Ed God-frey, as Probate Judge of Fayette County, Alabama, was void. We reverse.
On September 7, 1982, in the Democratic primary election for the office of Judge of Probate of Fayette County, Ed Godfrey received 3106 votes, William Oswalt received 3293 votes, and a third candidate, not a party to this action, received 1198 votes. Since no candidate received a majority of the votes, a second primary, or runoff, election was held on September 28. In that election, Godfrey, the appellant, received 3674 votes and Oswalt, the appellee, received 3647 votes. Following this runoff, on September 29, 1982, a written document entitled “Certificate of Results,” signed by the chairman and the secretary of the Fa-yette County Democratic Executive Committee, was forwarded to the Probate Judge of Fayette County, the chairman of the state Democratic Party, and the secretary of state. This written document stated in part:
“We, the undersigned Chairman and Secretary of the Fayette County Democratic *42 Executive Committee hereby certify that at the Democratic Primary Run-Off Election held Tuesday, September 28, 1982 the result of said Primary in this County was as follows:”
On September 30, Oswalt filed a contest of the runoff election with the Fayette County Democratic Executive Committee. On October 5, a subcommittee of the Fa-yette County Democratic Executive Committee was appointed to hear the contest. That subcommittee met on October 12, 1982, and, after hearing arguments from the attorneys, issued an order dismissing the contest, signed by the chairman. The dismissal was filed with the probate judge of the county, the chairman of the state Democratic Party, and the secretary of state. On October 14, 1982, Oswalt filed notice of appeal to the state Democratic Executive Committee; however, that appeal was not heard until November 8, 1982, when the state Committee denied the appeal. The general election was held in the interim on November 2, and Godfrey won against a Republican opponent.
Subsequently, Oswalt filed suit in Fa-yette County Circuit Court seeking to have the general election for probate judge declared void. The learned trial judge found that following the filing of the election contest Ed Godfrey was never certified as the Democratic Party’s nominee as required by Code 1975, §§ 17-7-1, 17-16-73, and/or 17-16-86, and therefore, that the name of Ed Godfrey should not have appeared on the ballot and that all votes cast for Ed Godfrey were illegal. The trial court also certified its holding to the “appointing power,” the Governor of Alabama, for appointment after the hearing and determination of all appeals.
The proper resolution of the issues presented in this appeal is not without difficulty because of certain statutory provisions authorizing election contests within our political parties and requiring the prompt determination of such contests within certain time periods before the next ensuing election. The time provisions in the election contest statutes cause difficulties because of the more recent statutes changing the time for holding primary elections of political parties to the month of September. See, Code 1975, § 17-16-6; and Ala. Acts 1978, No. 691, § 16. Most of the statutes governing the contest of elections were enacted at a time when the primary elections were held in May rather than in September. Thus, the time provisions contained in the statutes no longer fit the realities of our election procedures.
We acknowledge these difficulties and undertake to resolve them in the context of our determination of legislative intent. In White v. Knight, Ala., 424 So.2d 566 (1982), we stated, “[T]he basic and underlying purpose of the pertinent statutes ... is to get the candidates certified and have their names placed on the November ballots.” 424 So.2d at 569. Accordingly, in the case before us, we deal with the issues recognizing that the underlying purpose remains the same despite the factual differences between this case and White.
We are also mindful of certain principles this Court has followed in deciding cases concerning election contests. In Perloff v. Edington, 293 Ala. 277, 302 So.2d 92 (1974), we recognized that “the Legislature has given the handling of political party nominations to the several political parties,” and that the Legislature intended that, to whatever extent possible, “political parties would not be bothered in the handling of their nominating elections and the contests arising therein.” 293 Ala. at 279. We also reiterated in Perloff the principles set forth in Longshore v. City of Homewood, 277 Ala. 444, 446, 171 So.2d 453 (1965):
“[Ejection contests exist only by virtue of statutory enactment and such statutes are to be strictly construed. Groom v. Taylor, 235 Ala. 247, 178 So. 33. ‘The right to contest an election is not a common-law right (Cosby v. Moore, 259 Ala. 41, 65 So.2d 178). Elections belong to the political branch of the government, and, in absence of special constitutional or statutory provisions, are beyond the control of judicial power.’ 29 C.J.S. Election § 246.”
*43 We are also of the opinion that once a general election has taken place and the people have cast their votes, there must be a compelling reason before the courts will void that election.
The trial court held that pursuant to Code 1975, §§ 17-7-1, 17-16VT8, and/or 17-16-86, Godfrey was not properly certified as the Democratic nominee.
Section 17-7-1 provides:
“(a) The following persons shall be entitled to have their names printed on the appropriate ballot for the general election, provided they are otherwise qualified for the office they seek:
“(1) All candidates who have been put in nomination by primary election and certified in writing by the chairman and secretary of the canvassing board of the party holding the primary and filed with the probate judge of the county, in the case of a candidate for county office, and the secretary of state in all other cases, on the day next following the last day for contesting the primary election for that office if no contest is filed. If a contest is filed, then the certificate for the contested office must be filed on the day next following the date of settlement or decision of the contest.”
Pursuant to this section, the “Certificate of Results,” signed by the chairman and secretary of the county Democratic Executive Committee, was forwarded to the appropriate officials. Apparently, Oswalt successfully argued to the trial court that this document was not a certification, but rather was merely a declaration of results as described in Code 1975, § 17-16-35. We must observe that this written document contained the words “hereby certify”; it was signed by both the county chairman and the secretary; and a copy of the document was directed to the judge of probate. While it serves as the declaration of results, we hold that it also fulfilled the requirements for certification outlined in Code 1975, § 17-7-1, and, therefore, that on September 29, 1982, Godfrey was certified as the Democratic nominee.
The trial court’s decision was also based upon Code 1975, § 17-16-73, which provides:
“When a contest of a nomination is instituted or where a special primary to nominate is held, as provided for in this chapter, the declared nominee for such office shall not be certified until after termination of the contest filed in the time herein prescribed.”
The contest of this election was timely filed within 24 hours after the results of the primary election were declared. However, the declaration of results also served to certify Godfrey as the nominee of the Democratic Party. In this situation, where the declaration is also used to certify the candidate, we hold that § 17-16-73 serves to render the attempted certification of the contested party ineffective until such time as the contest is determined.
The trial court also considered Code 1975, § 17-16-86, which provides:
“Upon the hearing of any contest, if the state or county executive committee finally determines who is the legal nominee for any office, it shall make a declaration of its judgment upon the question, but a failure or refusal by the committee in which the contest is brought to hear and determine the same as much as 40 days before the general election in November shall be treated as a dismissal or the rendition of judgment against the contestant, and a certificate thereof shall be forwarded- by the chairman to the proper destination: the county chairman to the probate judge within five days, the state chairman to the secretary of state within 10 days and the secretary of state to the probate judge within 12 days after the result, but all certificates shall be made so as to get the nominee on the ballots for the general election in November.”
This 40-day rule no longer fits our primary election schedule and we have held such rule to be directory rather than mandatory. White v. Knight, supra. However, the procedures for indicating that a contest has been terminated are still workable. The statute directs the county executive com *44 mittee to forward a “declaration of its judgment” to the probate judge. The chairman of the Fayette County Democratic Executive Committee forwarded an “Order of Dismissal” of the contest to the appropriate official on October 12, 1982. We hold that this dismissal served to make effective the certificate whose operation had, in effect, been rendered ineffective by the filing of the contest on September 30.
The appellee also argues that Godfrey could not have been properly certified following the action taken by the county committee because the committee failed to take evidence on the alleged improprieties contested in the primary election. Section 17-16-81 provides:
“The chairman of the county executive committee, upon the filing with him of any contest as provided in this article, shall, within five days, call said committee together at the county seat at a time not less than 10 days nor more than 20 days after the filing of such contest to hear and determine the same.”
Code 1975, § 17-16-81. In that contest no witnesses were sworn when the committee met, but arguments were received from attorneys for both parties. The committee dismissed the contest after hearing these arguments.
The appellee argues that the county committee failed to “hear” the contest. If that were the case, under our prior cases, the county committee would lose jurisdiction if it failed to hear the case at the end of 20 days. Perloff v. Edington, 293 Ala. 277, 302 So.2d 92 (1974). As stated in Perloff, “If the committee or the chairman fail or refuse to follow the mandates of the statutes, the only recourse of either the contestant or the contestee is to the courts. In such cases, the courts are open.” 293 Ala. at 281, 302 So.2d at 96. See also, Ex parte State ex rel. Bragg, 240 Ala. 80, 197 So. 32 (1940). Thus, if the county committee failed to hear the contest, the contestant had a remedy in the state court system.
The appellee Oswalt would have the court hold that pursuant to § 17-16-73, the certification of Godfrey was ineffective not only during the original contest heard by the county committee, but also during the appeal to the state committee. This approach would allow a contesting party to keep an individual off the general election ballot simply by filing a contest, presenting evidence at the county committee level and then pursuing an appeal until it became too late to get the contestee’s name on the ballot. The clear intent of the Legislature in Code 1975, § 17-16-86, is “to get the nominee on the ballots for the general election.” Accordingly we are compelled to construe the provisions of § 17-16-73 narrowly, as applied to the facts in this case. That is, the certification is only rendered ineffective during the initial contest before the county committee and is not suspended or invalidated by any subsequent appeals to the state committee. The approach taken here serves to get the nominee on the ballot.
This strict construction of Code 1975, § 17-16-73, is warranted for two reasons. First, our cases have uniformly held that “election contests exist only by virtue of statutory enactment and such statutes are to be strictly construed.” Longshore v. City of Homewood, 277 Ala. 444, 446, 171 So.2d 453, 455 (1965). See also, Turner v. Cooper, 347 So.2d 1339 (Ala.1977). Section 17-16-73 clearly covers the “institution” of a contest at the county committee level. It arguably could be applied to a subsequent appeal; however, our strict construction approach leads us to reject this expansive reading of the statute.
We are also led to this result by the actual time limits between the primary runoff and the general election. The contest was filed on September 30,1982. The county committee had until October 20 to hear and determine the contest. The contestant then had 10 days to file an appeal with the state committee and the state committee had 20 days to act. This brings the date for final determination to approximately November 19 if the full time was taken at every step of the statutory procedure. Since this would have been after the general election, we think the most reasonable *45 interpretation of § 17-16-73 is to render the certification ineffective during the contest before the county committee, which must be held before the general election. Since the state committee could meet after the general election, while still remaining within the 10 to 20 day period set out in Code 1975, § 17-16-85, we find compelling reasons not to continue to suspend the certification.
The dissent, in reviewing the time periods involved, fails to consider the full amount of time available to the various committees under the statutory provisions. We are of the opinion that this approach is unjustified. At a minimum the committees should be allowed the full amount of time set forth in the statutes for the determination of these contests.
Learned counsel for the contestant Os-walt would have us hold that since the state executive committee did not hear and determine the appeal of the primary election contest prior to the time necessary to certify the nominee in order to place the name on the general election ballot, this would have the legal effect of preventing a proper “certification,” and thus that there was no certification, thereby voiding the general election as to this office. We cannot reach the conclusion urged by Oswalt, because of our view of the intent of the statutes generally respecting election contests. Furthermore, the legislative intent outlined in White v. Knight, supra, strongly influences our interpretation here.
In this case we are called upon to choose between two conflicting results caused by the application of the time frames provided in our statutory scheme respecting contests of political party elections and nominations. When called upon to do so, we must choose the determination which allows for at least a preliminary examination of the merits of a contest at the county level within the 10 to 20 day period prescribed in § 17-16-81 and yet prevents the contestant from keeping the contestee off the ballot due to a lengthy appeal to the state committee and possibly the courts.
For these reasons, we hold that there was a certification of Godfrey, and that he was properly on the ballot in the general election. Accordingly, the judgment is due to be reversed and the case remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, ALMON and EMBRY, JJ., concur.
FAULKNER, J., concurs in the result.
JONES, BEATTY and ADAMS, JJ., dissent.