I respectfully dissent. Because I agree with the rationale and the conclusion in the Attorney General's opinion cited in the majority opinion, I preface my dissent with this observation: The language from the Attorney General's opinion, "new district 96 will not come into existence until November 3, 1982," is technically incorrect. When, in fact, it came into legal existence depends upon the action of the United States Attorney General pursuant to the 1965 Voting Rights Act. While this inaccurate premise may materially affect Representative Turner's situation under Act No. 81-1049 (the same having been approved by the legislature October 26, 1981), it is conceded by all parties in the instant case that House District 34 was established less than one year from the date of the general election, thus invoking Section 47's "but if not" clause. *Page 254 
Acknowledging that the Attorney's General's opinion is contrary to its position, the Party, through counsel's brief, uses multiple examples to demonstrate "how unfair [the Attorney General's] interpretation would be."
 "Let us assume a legislative district made up of two towns called Alpha and Bravo and a neighboring district containing the town Charlie. Under the new reapportioning act, Alpha becomes a district by itself, and Bravo and Charlie are joined in one district. The Attorney General would allow any resident of Alpha to move to Bravo or Charlie and claim that he had lived for one year in the new Bravo-Charlie District."
I interrupt this recitation of the Party's "unfair" examples to make this comment: The last-quoted sentence from the Party's brief is in error to the extent that it interprets the Attorney General's opinion as allowing a resident of Alpha to move to Charlie and claim that he had lived in the new district for one year. The point that was raised initially in Representative Turner's letter, and re-emphasized in the Attorney General's opinion, was the fact that Representative Turner proposed to move "to that area currently in old district 96, but also encompassed by what will be new district 96." This is true because Section 47 of the Constitution, specifically the exception clause, can only be interpreted to provide that if the district which the candidate seeks to represent has not been established for one year next before the election, then such candidate shall have been a resident of such district from which the newly-established district has been taken for one year next before the election. By way of a footnote to the last-quoted sentence from the Party's brief, counsel makes the following comment:
 "Under the opinion to J.E. Turner, an incumbent legislator would have to be careful not to move out of his present district, but there is no reason to restrict the Attorney General's reasoning so as to prohibit a non-legislator's move into any part of the new district."
Unless the comment contained in this footnote is a play on the words "you currently . . . represent old district 96," thus interpreting the Attorney General's opinion as making a distinction between an incumbent and a non-incumbent candidate, I fail to understand the point of the comment. Suffice it to say, assuming the accuracy of the factual premise sufficient to invoke the "but if not" clause, I agree with the Attorney General's interpretation of Section 47. The opinion's references to Representative Turner's incumbency is speaking merely within the context of Representative Turner's situation, and not for any purpose of distinguishing Turner's situation from that of any other candidate otherwise situated.
I recite another "unfair" example from Appellant's brief:
 "The town of Delta was formerly a district. It has recently been split among four new districts. Under the Attorney General's opinion, any resident of Delta could move to any of the four districts and be a qualified candidate because each includes some part of Delta."
Again, the Party's conclusion, in my opinion, is a misinterpretation of the Attorney General's opinion. "Any resident of Delta" could not meet the one-year residency requirement by moving to any part of the four new districts merely because each includes some part of Delta. Such an interpretation is not in keeping with Section 47. Only if he moved to some portion of the new district that was also in the old Delta district, could he meet the "from which the same shall have been taken" criterion of Section 47. I will pursue my analysis of this point within the context of the instant facts later in this dissent.
The principal objection raised by the Party to the Attorney General's opinion is the choice which it gives to one citizen that may not be available to another. To this I would answer: This choice, under prescribed circumstances, is the very choice inherent in the "but if not" clause of Section 47.
Admittedly, Section 47 of the Alabama Constitution, including the "but if not" clause, was drafted and adopted in *Page 255 
contemplation that counties, as political subdivisions, would serve as the basis for delineating House districts and Senate districts — with one or more representatives from each county and one or more counties within each Senate district. While the federally-mandated reapportionment scheme abandons the county unit or political subdivision concept, thus creating an environ not contemplated at the time of the adoption of Section 47, I see no reason for treating our own constitutional mandate as inapplicable for reasons of obsolescence or difficulty of application.
For the sake of clarifying my position, I now interpret and apply Section 47's "but if not" clause to Candidate Gray's situation. Immediately before June 1, 1982, Gray lived in House District 34, where he has resided for approximately nine years. In response to the United States Attorney General's partial disapproval of the 1981 reapportionment act (pursuant to Section 5 of the 1965 Voting Rights Act, 42 U.S.C. § 1973c), the state legislature adopted Act No. 82-629, effective June 1, 1982. By virtue of the newly-drawn House district lines, "old" House District 34 is overlapped by five new House districts. Gray now resides in "new" House District 32.
If, before the 1982 general election, Gray changes his residence to new House District 34, which residence site is also located in an area formerly encompassed by old House District 34,[1] he has complied with the one-year residency requirement of Section 47. It is clear that, except for the "but if not" clause, the one-year residency requirement could not be met under the instant circumstances. It is the "but if not" clause, however, when given a reasonable and logical field of operation, that brings Gray, subject to certain contingencies, within its compliance.
It is without dispute that "new" House District 34 has not been established for one year before the election. It must be determined, then, if Gray has been a resident for one year of the House district from which the "new" House district has been taken. Assuming his residency in that portion of "new" House District 34 which also comprised "old" House District 34, it is clear that he has been a resident for more than one year of the "district from which the same [the new district which he now seeks to represent] shall have been taken."
In conclusion, I emphasize that my interpretation neither overrules, modifies nor weakens Butler v. Amos, 292 Ala. 260,292 So.2d 645 (1974). Indeed, I fully embrace Butler's holding that the viability of Section 47's one-year pre-election residency requirement is unaffected by the federally-mandated reapportionment of the state legislature.
I would simply hold that this constitutional one-year pre-election requisite shall have been complied with in the event the Appellees are, on November 2, 1982, residents of an area in their respective "new" districts in which they have qualified as candidates, which were part of the area comprising their former house districts and in which they had resided for more than one year. It is my view that any other holding would violate both the spirit and letter of Section 47. I believe the majority has erred in giving a party rule and its interpretation status superior to that of our State Constitution.
[1] The condition of Gray's moving before the 1982 general election is stated in the context of Gray's allegation and proof of intent to move and not as a legal requirement. In fact, other than the one-year requirement, the only constitutional residency requirement is found in the last clause of Section 47: "[A]nd they shall reside in their respective counties or districts during their terms of office." Under my interpretation, therefore, if Gray is elected in the general election as a state representative from District 34, he can then serve in that capacity so long as he resides in District 34 during the term of his office; i.e., he could await the outcome of the general election, and then, if elected, he could move into new District 34, as hereinabove discussed, and hold office during his term so long as he continued to reside therein. *Page 256